IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSA MARIA SANTIAGO CONCEPCIÓN, NATIVIDAD CONCEPCIÓN RIVERA, <br><br>**Plaintiffs,** <br><br>v. <br><br>DAVOL, INC., C.R. BARD, INC., BARD SHANNON LTD., FRANCISCO A. BATLLE BATLLE, <br><br>**Defendants.** | Civil Action No. <br><br>[Removal from the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico, Civil No. SJ2020CV03729] |

## NOTICE OF REMOVAL

Defendants C. R. Bard, Inc., Davol, Inc., and Bard Shannon Ltd., (collectively "Bard") hereby remove this Action from the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico, to the United States District Court for the District of Puerto Rico. Bard appears for the purpose of removal only and reserves all defenses and rights available to it. In support of removal, Bard further states as follows:

### I. PROCEDURAL BACKGROUND AND RELEVANT FACTS

**A. Background**

1. On or about October 29, 2020, Plaintiffs commenced this civil action in the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico by filing a Complaint captioned *Rosa Maria Santiago Concepción et al. v. C.R. Bard Inc.*, *et al.*, Civil Case No. SJ2020CV03729 (the "State Court Action"). In the Complaint, Plaintiff Rosa Maria Santiago Concepción ("Plaintiff Santiago Concepción") and Plaintiff Natividad Concepción Rivera ("Plaintiff Concepción Rivera") (collectively, "Plaintiffs") allege that Bard designed, manufactured, marketed, and sold a medical device called a Ventrio ST Hernia Patch ("Ventrio

ST"), which was surgically implanted into Plaintiff Santiago Concepción in or around June 16, 2019, in connection with a hernia repair.  *See* Compl. ¶¶ 2, 4.  Plaintiffs additionally allege that the Ventrio ST manufactured and sold by Bard suffered from design, warning and manufacturing defects.  *See* Compl. ¶¶ 23, 24.  Plaintiff Santiago Concepción further alleges that she endured "great pain and suffering as a result of the defective mesh," and "[a]s a result of the defendants' negligent actions and omissions, the plaintiff suffered physical harm and severe mental distress. . . ."  *See id.* ¶¶ 27, 53.  Plaintiffs assert various product-liability claims against Bard, including claims for strict liability, design, manufacture, and warning defects.[1]  Bard has not served an Answer to the Complaint or has otherwise plead.  Pursuant to Fed. R. Civ. P. 81(c)(2)(C), Bard must answer or present other defenses or objections on or before December 14, 2020—that is, 7 days after filing of this Notice of Removal.  Pursuant to 28 U.S.C. § 1446(a), Bard has attached copies of all process, pleadings and orders served on it in the State Court Action as **Exhibit A** to this Notice of Removal.  A translated copy of the Complaint is attached as **Exhibit B**.

2. Plaintiffs also attempt to allege a claim for lack of informed consent against Dr. Francisco A. Batlle Batlle ("Dr. Batlle Batlle").  *See* Compl. ¶ 39**.**

3. As of the filing of this notice of removal, none of the Bard defendants had been served with the Summons and Complaint.

4. To the best of Bard's knowledge, Defendant Dr. Batlle Batlle has not yet been served with a copy of the Summons and the Complaint.  The consent of unserved defendants is

---

[1] In their discussion regarding the purported defects associated with the Ventrio ST, Plaintiffs also raise an entirely irrelevant criminal proceeding from 25 years ago involving a different division of Bard and which had no connection to the hernia mesh. See *United States v. CR Bard. Inc.*, 848 F. Supp. 287 (D. Mass. 1994) (involving angioplasty catheters).  Compl., ¶ 16.  That litigation and the related plea agreement are not only irrelevant, but are also unfairly prejudicial, improper character evidence, and would be excluded for numerous reasons pursuant to Federal Rules of Evidence 401-404 and 609.  Similar considerations apply two Plaintiffs' reference to "thousands of" claims by other plaintiffs related to Bard's hernia mesh devices.  *See id.* ¶ 15.

2

not required for successful removal. *See, e.g.,* 28 U.S.C. § 1441(b); *see also Nogueras-Cartagena v. Rossello-Gonzalez,* 182 F.R.D. 380, 384 (D.P.R. 1998) (ruling that removal was proper where neither defendant had been served, and codefendant "was not required to join in the notice of removal, since service of process had not effected.").

5. All of the Bard defendants consent to the removal of this action. Even if Dr. Batlle Batlle had been served, his consent to remove is not necessary because he is fraudulently joined in this action. *See Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship.").

6. This case is removable under 28 U.S.C. § 1441(b) because no defendant who is "properly joined and served" is a citizen of the Commonwealth of Puerto Rico.

**B. Bard's Removal Is Timely**

7. On November 9, 2020, Bard received the Complaint in the State Court Action. This Notice of Removal is filed within 30 days of the date any defendant was served with a copy of the initial pleading setting forth the claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b). Accordingly, the removal of this action is timely.

8. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Bard has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. In filing this Notice of Removal, Bard reserve all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## II.      BARD HAS MET THE PROCEDURAL REQUIREMENTS FOR REMOVAL

9.      No previous request has been made for the relief requested herein.

10.     This Notice of Removal is properly filed in the District of Puerto Rico pursuant to 28 U.S.C. § 1446(a).

11.     No party in interest properly joined and served as a defendant in this action is a citizen of the state (Puerto Rico) in which this action was brought.  *See* 28 U.S.C. § 1441(b).

12.     The United Stated District Court for the District of Puerto Rico is the proper division to where this matter should be assigned because it is the District Court embracing the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico, where Plaintiffs' action is pending.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 119.

## III.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

### A.  There Is Complete Diversity of Citizenship Between the Parties

13.     There is complete diversity between Plaintiffs and the Bard defendants.

14.     Plaintiff Santiago Concepción is a citizen and resident of the Commonwealth of Puerto Rico, City of San Juan.  *See* Compl. ¶ 5.

15.     Plaintiff Concepción Rivera is a citizen and resident of the Commonwealth of Puerto Rico, City of San Juan.  *See id.*

16.     Davol, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island and, therefore, is a citizen of Rhode Island for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

17.     C. R. Bard, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business

4

in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

18.     Bard Shannon Limited is, and was at the time Plaintiffs commenced this action, incorporated in Ireland with its principal place of business in Humacao, Puerto Rico.  28 U.S.C. § 1332(c)(1).

19.     Plaintiffs plead that Dr. Batlle Batlle is a citizen of Puerto Rico, city of San Juan. *See* Compl. ¶ 9.

20.     Dr. Batlle Batlle and Bard Shannon Limited's Puerto Rico citizenship does not preclude the proper removal of this action, however, because both were fraudulently joined in this case.

### B. The Court Should Disregard Dr. Batlle Batlle and Bard Shannon Limited's Citizenship for Jurisdictional Purposes Because They Are Fraudulently Joined in this Action

21.     The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity.  "[U]nder the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." *Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014).  In this context, fraudulent joinder "applies to the joinder of an in-state defendant against whom plaintiff simply has no chance of success, whatever the plaintiff's motives." *Brown v. GlaxoSmithKline LLC*, No. MDL No. 1:15-md-2657-FDS, 2019 WL 2491587, at *42-43 (D. Mass. June 13, 2019) (citations omitted); *see also Five Star Quality Care, Inc. v. Sunrise Senior Living, Inc.*, No. 09-10503-RGS, 2009 WL 1456303, at *1 n.2 (D. Mass. May 22, 2009) ("Fraudulent joinder occurs when a defendant against

whom a plaintiff has no conceivable claim is named as a party to a lawsuit solely for the purpose of defeating federal jurisdiction."). As such, a court weighing the issue of fraudulent joinder, may "consider additional evidence beyond the claims made in the pleadings, including affidavits of the parties," to determine whether the plaintiff has a genuine interest in pursuing claims against a defendant. *Phillips v. Medtronic, Inc.*, 754 F. Supp. 2d 211, 215 (D. Mass. 2010); *Stewart v. Ethicon, Inc.*, No. 19-4776, 2020 U.S. Dist. LEXIS 50271, at *13-14. (E.D. Pa. Mar. 19, 2020) (denying remand and ruling that the plaintiff fraudulently joined a non-diverse defendant, finding that plaintiff had no intent to pursue claims against that defendant). For the reasons stated below, Dr. Batlle Batlle and Bard Shannon Limited are fraudulently joined in this action, and this Court should disregard their citizenship.[2]

22.    As noted above, Plaintiffs fraudulently joined Dr. Batlle Batlle and Bard Shannon Limited and their presence will not prevent diversity jurisdiction. Plaintiffs have joined Dr. Batlle Batlle and Bard Shannon Limited solely in an attempt to defeat Bard's right to remove this action, because their allegations against Dr. Batlle Batlle and Bard Shannon Limited do not demonstrate a genuine intent to pursue claims against them. *See generally* Compl. ¶¶ 39-52.

23.    Plaintiffs' claim against Dr. Batlle Batlle is improper informed consent. Under Puerto Rico law, the doctrine of informed consent "imposes on physicians the duty to inform their patients about the nature and risks of the proposed medical treatment in order to place the patients in a position to reach an intelligent and informed decision." *Santana-Concepción v. Centro*

---

[2] After removal, Bard intends to seek transfer of this action to *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2:18-md-02846-EAS-KAJ ("MDL 2846") (S.D. OH.), because this case is one of many that have been filed in both federal and state courts across the country involving Bard's hernia repair devices made, at least in part, with polypropylene, including the product at issue in this action. This action belongs in the MDL to facilitate judicial economy and coordinated pretrial proceedings, and, because there are other similar cases in the MDL that raise the issue of fraudulent joinder of local healthcare providers, the MDL Judge should rule on this recurring issue for the sake of economy and consistency of results. The Judicial Panel on Multidistrict Litigation recently transferred another action involving the same question, which is currently pending in the MDL. *See Zimmerman v. Bard et al.*, Case No. 2:20-cv-04377-EAS-KAJ (S.D. OH) (filed September 8, 2020).

*Médico del Turabo, Inc.*, 768 F.3d 5, 13 (1st Cir. 2014) (citations omitted). Further, a physician is not required to inform the patient about "every remote, hypothetical risk posed by a medical procedure," but instead "the scope of the duty varies with the nature of the proposed treatment." *Rodriguez-Sanchez v. United States*, 380 F. Supp. 3d 184, 195 (D.P.R. 2016) (citations omitted).

24. Accordingly, the information a physician must furnish in the given case depends on "information that would be given by 'the average physician pursuant to the standards prevailing in the medical community.'" *Id.* Therefore, as in a medical malpractice action, a plaintiff alleging a lack of informed consent must provide an expert witness "to establish the information that should have been divulged to the patient." *Id.* (recommending the grant of summary judgment on informed consent claim, where plaintiff argued that consent forms were inadequate but could not provide expert testimony in support thereof).

25. Additionally, in order to prevail on such a claim, a plaintiff must also "prove that the complained-of injury resulted from the failure of the physician to fully inform the patient (i.e., causation)." *Santana-Concepción*, 768 F.3d at 13. Under Puerto Rico law, "the question of proximate causation is viewed from the perspective of the physician [and] the analysis does not turn on whether the patient would have declined to consent if provided with the allegedly absent information." *Id.* As such, the appropriate inquiry is whether "in the normal course of events [the physician] had to foresee that the lack of pertinent information would lead [the] patient . . . to take a different decision than the one she would have taken if she had been suitably informed." *Id.* at 14 (affirming summary judgment for physician on informed consent claim where plaintiff failed to prove that her surgeon could reasonably foresee that "further discussing some of the possible side effects of surgery . . . would have changed [plaintiff's] decision to consent to surgery"). Most fundamentally, Plaintiffs will not be able to prevail on any claim for lack of informed consent

7

because the Complaint plainly alleges that "Dr. Batlle Batlle was not in the same position as the mesh manufacturers to know, and therefore inform Ms. Santiago, about all possible complications, risks and dangers of the mesh," because Bard's disclosure of the risks was allegedly "incomplete, inaccurate, and misleading."  Compl. ¶¶ 39, 41.  Plaintiffs' own pleading shows that they cannot show that Dr. Batlle Batlle could have provided full risk information or that any purported lack of informed consent caused their alleged injuries.  Furthermore, Plaintiffs' Complaint fails to discuss the requirement for an expert witness, and nowhere do Plaintiffs suggest that their allegations are supported by any expert testimony.  These deficiencies demonstrate the lack of any genuine intent to pursue claims against Dr. Batlle Batlle, and underscore that Plaintiffs joined their physician for no reason other than to thwart Bard's right to remove this case.[3]

26. A further examination of the Complaint confirms that this constitutes fraudulent joinder, and that Plaintiffs' case is directed at Bard, not Dr. Batlle Batlle.  ***First***, Dr. Batlle Batlle, as Plaintiff Santiago Concepcion's surgeon, does not bear any liability for the allegedly "defective mesh" with which Plaintiff was implanted.  ***Second***, Plaintiffs essentially allege that Dr. Batlle Batlle "completely failed to inform on the possible risks and complications" associated with the Ventrio ST, stated that "I'm going to put a mesh in you," and did not discuss "alternatives to surgical treatments or meshes."  Compl. ¶¶ 42-44.  ***Third***, Plaintiff Santiago Concepción admits that she signed a consent form for the surgery, but claims that "the document itself does not constitute an explanation of the treatment, alternatives and risks of complications."  *Id.* ¶ 43.

27. However, Plaintiffs' allegations against Dr. Batlle Batlle are not only internally inconsistent, they contrast with the gravamen of Plaintiffs' Complaint.  Plaintiffs' allegations

---

[3] Plaintiffs do not assert a claim for medical malpractice but to the extent they argue that there is any such claim against Dr. Batlle Batlle based on their allegations, it likewise would fail for lack of expert testimony.  *See Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 6 (1st Cir. 2010).  Therefore, any purported medical malpractice claim would not preclude a finding a fraudulent joinder under these facts.

against Dr. Batlle Batlle, who implanted the Ventrio ST, are therefore irreconcilable with the crux of their allegations against both Dr. Batlle Batlle and Bard.  The core of Plaintiffs' Complaint is that the Ventrio ST was defective based on the "design, manufacture, marketing, labeling, lack of adequate warnings, distribution, sale, and placement" of the product on the market.  Compl. ¶ 10. However, most significantly, Plaintiffs directly allege that Bard concealed the purported risks of the Ventrio ST from Plaintiff Santiago Concepción's implanting surgeon, claiming that **"co-defendant Francisco A. Batlle Batlle was not in the same position as the mesh manufacturers to know, and therefore inform Ms. Santiago, about all possible complications, risks and dangers of the mesh."**  Id. ¶ 39. (emphasis added).  Further, the Complaint asserts that Bard provided "incomplete, inaccurate and misleading" warning and risk information to plaintiff's surgeon.  Id. ¶ 41.  Plaintiffs further allege that Ventrio ST was defective because polypropylene elicits an immune response which allegedly causes "degradation and contraction of the Ventrio™ ST, as well as the surrounding tissue, and contributes to the development of adverse reactions." Id. ¶ 18.  Finally, the Complaint also contends that polypropylene "is prone to degrade and fragment over time, causing chronic inflation and fibrosis, resulting in continuous damage," and purportedly contains "additional compounds that are filtered from the product and are toxic to tissues, increasing the inflammatory reaction and the intensity of fibrosis." Id. ¶ 21.

28.     In short, Plaintiffs repeatedly allege that Bard concealed and withheld material information about the Ventrio ST from Plaintiff Santiago Concepción's surgeon—undercutting and refuting their claims that Dr. Batlle Batlle was aware of the product's alleged dangers.  For instance, the Complaint asserts that Bard "had an obligation to know and disclose in a timely and appropriate manner the scientific and medical information about Ventrio™ ST, as well as to fully warn about its risks and side effects, but this was not done," that the company "minimized or

omitted its risks and adverse effects," and failed to provide "sufficient warnings or instructions on the level of risk, complications and danger," of the product. *Id.* ¶ 23. Plaintiffs also allege that Bard "did not mention the risks, dangers, defects and disadvantages of Ventrio™ ST in their marketing, but . . . promoted, marketed, sold and distributed" the device and "stopped disclosing information about the mesh's tendency to fail and cause bodily harm as well as complications." *Id.* ¶ 24.

29.     However, there is no allegation that Dr. Batlle Batlle played any role in the design, manufacture, warnings, or marketing of the Ventrio ST and because he did not—and could not— have had access to information that was allegedly withheld from him, Dr. Batlle Batlle cannot be held responsible for Plaintiffs' alleged injuries. In sum, the thrust of Plaintiffs' Complaint is that Bard—not Dr. Batlle Batlle—was responsible for the alleged defects in the design, manufacture, warnings, marketing, and sale of the Ventrio ST that purportedly caused Plaintiffs' injuries.

30.     In clear contrast to the product liability claims against Bard, the medical malpractice claims against Dr. Batlle Batlle are based on whether he failed to obtain informed consent before Plaintiff Santiago Concepción's implant surgery. Compl. ¶¶ 39-52. The crucial aspects of the two sets of clearly disparate claims are diametrically opposed and logically inconsistent. *Baisden v. Bayer Corporation* is instructive on this point. In *Baisden*, a pharmaceutical manufacturer removed a products liability, prescription drug case to federal court, asserting that the plaintiff fraudulently joined a local physician to defeat diversity. 275 F. Supp. 2d 759, 762-63 (S.D. W. Va. 2003). The district court agreed and denied remand, because the complaint alleged that the manufacturer concealed or misrepresented information regarding the drug's safety, while also alleging that the physician was negligent in his failure to warn of possible risks. *Id.* at 761-63. Recognizing the contrary positions, the court found that the plaintiff had

fraudulently joined the physician and dismissed him, which caused there to be complete diversity. *Id.* at 763. Other courts have found fraudulent joinder in similar circumstances. *See In re Neurontin Mktg.*, No. 04-10981-PBS, 2006 U.S. Dist. LEXIS 98614, at *54-56 (D. Mass. Dec. 22, 2006) (recommending denial of remand and finding local physician fraudulently joined where the "conclusory allegation that [the physician] negligently breached his duty to warn . . . of the risks of Neurontin, when paired with the myriad of contradictory allegations against Pfizer . . . particularly [in an MDL], is insufficient"); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that a physician was fraudulently joined when allegations that he knew or should have known of Baycol's risks were inconsistent with allegations that the manufacturer concealed information); *Louis v. Wyeth-Ayerst Pharm., Inc.*, No. 5:00 CV102LN, 2000 U.S. Dist. LEXIS 22694, at *6 (S.D. Miss. Sept. 25, 2000) (finding allegations of "manufacturers' intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belies any suggestion of knowledge, or reason to know by [the] resident defendants").[4] As in the cases above, this Court should rule that Dr. Batlle Batlle is fraudulently joined.

---

[4] Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims against healthcare providers with product liability claims against prescription product manufacturers. *See, e.g.*, *Sutton v. Davol, Inc*., 251 F.R.D. 500, 505 (E.D. Cal. 2008) (holding that malpractice claims against healthcare providers were fraudulently misjoined with claims against manufacturers for the allegedly defective mesh patch, and "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *see also In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, *7 (D. Minn. June 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the [medical device manufactures]"); *In re Rezulin Prod. Liab. Litig*., MDL No. 1348, 2003 WL 21276425, *1-2 (S.D.N.Y June 2, 2003) (finding claims against non-diverse physician were misjoined with claims against drug manufacturer); *Stone v. Zimmer, Inc.,* No. 09-08202-CIV, 2009 WL 1809990, *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor] and the [pain management center] with the product liability claim against [the product manufacturer] is thus inappropriate because these claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability arising out of the same transaction, occurrence or series of transactions or occurrences.") (internal quotation omitted).

31. Plaintiffs' claims against Bard Shannon Limited also fail as they are not based on any facts in the Complaint. Plaintiffs allege that Bard Shannon Limited "operates a factory in San Gerónimo Industrial Park Lot 1 Road 3 KM 77.5 Humacao, Puerto Rico, and was the company that manufactured, sold or distributed the defective mesh in question." Compl. ¶ 7. Other than this description, there are no allegations about how Bard Shannon Limited is liable under any cause of action. Plaintiffs do not allege that Bard Shannon Limited defectively manufactured the device at issue in this case, let alone allege any facts that support a manufacturing defect claim. There is also not a stand-alone manufacturing claim. A manufacturing defect claim is required to allege that the product is one that "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect." *See Carballo-Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 71 (D.P.R. 2001) (citation omitted). Here, there are no facts at all in the Complaint that Plaintiff Santiago Concepción's Ventrio ST differed from the intended result or was different in any way from "identical units of the same product line." The allegations of any defect associated with the Ventrio ST in the Complaint apply to all Ventrio ST devices and not Plaintiff Santiago Concepción's device in particular. *See* Compl. ¶¶ 23-26. Simply put, Plaintiffs have alleged no facts that support a manufacturing claim against Bard Shannon Limited or any of the defendants in this case. Instead, Plaintiffs have simply lumped Bard Shannon Limited in with the other Bard defendants in an attempt to destroy diversity jurisdiction.

32. Accordingly, the Court should not consider Dr. Batlle Batlle's or Bard Shannon Limited's in-state status as a bar to removal because their fraudulent joinder is obvious under

well-settled state law and because courts have found that a defendant is fraudulently joined where a plaintiff's allegations revealed a lack of intent to pursue claims against those defendants.

### III.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

33.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see* 28 U.S.C. § 1332(a). A defendant's allegations regarding the amount in controversy are presumed correct. *See Owens*, 574 U.S. at 89.

34.     Where, as here, a plaintiff does not specifically allege that the amount in controversy is less than the jurisdictional minimum, courts have readily found that the amount in controversy exceeds $75,000 where the plaintiff alleges injuries in connection with a prescription product. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000").

35.     Here, Plaintiff Santiago Concepción claims that she "has experienced great pain and suffering as a result of the defective mesh." Compl. ¶ 27. Plaintiff Santiago Concepción also alleges that her injuries related to the Ventrio ST resulted in "serious damage" which caused her to spend "eight distressing days in the hospital." *Id.* ¶¶ 25, 53. Furthermore, Plaintiff Santiago Concepción contends that she will have to undergo surgery and that "[t]he pain and suffering are not yet over." *Id.* ¶ 53. Finally, Plaintiffs assert that they are entitled to damages "for the physical, emotional and economic damages suffered, including medical expenses, and all attorney costs and fees to the fullest extent permitted by law."[5] *Id.*, Prayer for Relief. Given the nature of these alleged injuries and the broad scope of past and future damages sought in the Complaint, both

---

[5] Bard denies that it caused Plaintiffs' alleged injuries.

economic and non-economic, it is "facially apparent" from the Complaint that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. As such, the amount-in-controversy for diversity jurisdiction is satisfied and removal is proper. 28 U.S.C. § 1332(a).

36.  In addition, a number of plaintiffs who have brought similar product liability actions against Bard in federal court have specifically plead an amount-in-controversy in excess of the required $75,000. *See, e.g., Fiebig v. Davol Inc.,* No. 3:14-cv-01954 (N.D. Tex. filed June 16, 2014) (product liability case regarding Ventrio hernia patch and alleging damages in excess of amount-in-controversy for federal diversity jurisdiction); *Burge v. Davol Inc.*, No. 1:07-CV-06885 (N.D. Ill. filed Dec. 6, 2007) (Kugel mesh patch case seeking damages in excess of amount required by 28 U.S.C. § 1332); *Terrell v. Davol Inc.*, No. 2:13-cv-05074 (E.D. Pa. filed Aug. 28, 2013) (Marlex Mesh case alleging damages in excess of amount-in-controversy for federal diversity jurisdiction); *see also In re Rezulin*, 133 F. Supp. at 295-96 (examining other suits involving the same product to satisfy amount-in-controversy requirement).

37.  Together, these cases, along with Plaintiffs' Complaint, demonstrate that the amount in controversy exceeds $75,000, and Bard has, therefore, sufficiently alleged the basis for diversity jurisdiction at the notice-of-removal stage.

38.  Bard will give written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d). Attached hereto as **Exhibit C** is a copy of the Notification of Notice of Filing of Removal, which will promptly be served upon Plaintiffs' counsel and filed with the Clerk of the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico. *See* 28 U.S.C. § 1446(a), (d).

39. By removing this action to this Court, Bard does not waive any defenses, objections or motions available to them under state or federal law.

40. Bard reserves the right to amend or supplement this Notice of Removal.

41. Bard requests a trial by jury on all issues so triable.

**WHEREFORE**, Defendants C. R. Bard, Inc., Davol, Inc., and Bard Shannon Limited, and Company pursuant to 28 U.S.C. § 1441, respectfully remove this action from the Court of First Instance, Superior Court of San Juan, Commonwealth of Puerto Rico, to the United States District Court for the District of Puerto Rico.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of December 2020.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LCC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

*/s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

*/s/ María Elena Martínez Casado*
María Elena Martínez Casado
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

*Attorneys for Defendants C. R. Bard, Inc., Davol Inc., and Bard Shannon Limited*

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this date we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and served a true and correct copy of the foregoing by certified mail and via email to all counsel as identified on the service list below, this 7th day of December 2020.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LCC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

*/s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

*/s/ María Elena Martínez Casado*
María Elena Martínez Casado
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

| | |
|---|---|
| Carlos Vélez Colón<br>Vélez Law Group<br>421 Ave. Muñoz Rivera, Piso 10<br>San Juan, PR 00918<br>Tel.: 787-599-9003<br>Email: jvelez@velezlawqroup.com<br>Email: zcastro(@djesuslaw.com<br><br>José Vélez<br>Zuleika Castro De Jesús<br>1969 S Alafaya Trail<br>#379 Orlando, FL 32828<br>Tel: 407-267-7130<br>Email: jvelez@velezlawqroup.com<br>Email: zcastro(@djesuslaw.com<br>*Counsel for Plaintiffs Rosa Maria Santiago Concepción and Natividad Concepción Rivera* | |